UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:23-cr-00014-04 |
| | ) | |
| RUSSELL MITCHELL, | ) | |
| Defendant. | ) | |

## SUPPLEMENT TO THE GOVERNMENT'S MOTION
## FOR PRETRIAL DETENTION

NOW COMES the United States of America, by and through its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, and files this supplement to the Government's prior motion for pretrial detention (ECF No. 85).

The Court should detain the defendant because there are no conditions of release which will reasonably assure the safety of any other person and the community as well as the defendant's appearance as required.

First, the nature and circumstances of the offense charged are very serious. The defendant is charged as a member of a drug conspiracy that operates in Vermont and elsewhere. The evidence in this case includes (but is not limited to) the following: On December 6, 2022, investigators conducted surveillance on co-conspirator Tyler Orvis' residence, 98 Meadow Road in Milton, Vermont. During the surveillance, investigators observed a gray Infiniti, registered to co-conspirator Sutton, parked outside. Law enforcement observed the defendant and Sutton exit 98 Meadow Road. Mitchell wore a black colored shoulder bag which was slung across his chest. Investigators surveilled the Infiniti to the Best Buy parking lot located at 26 Cypress Lane, Williston, Vermont. Sutton entered the Best Buy while Mitchell met with the occupants of several

vehicles in the Best Buy parking lot, consistent with potential drug trafficking. Law enforcement maintained surveillance on Mitchell's vehicle as it travelled to the Jericho Café and Tavern located at 30 Vermont Route 15, Jericho, Vermont.

At the same time, investigators also conducted surveillance at co-conspirator Dorothy Wilde's residence in Hyde Park, Vermont. Wilde's registered vehicle, a black Kia, departed her residence, occupied by two women, and traveled to the Jericho Café and Tavern located at 30 Vermont Route 15, Jericho, Vermont. As Wilde's vehicle entered the parking lot of the Jericho Café and Tavern, investigators observed Mitchell, who had arrived earlier in the Infiniti, walk across the lot, and enter the rear passenger door of Wilde's vehicle. Shortly thereafter, Wilde and Mitchell exited the vehicle and briefly entered the restaurant. A few minutes later, the two left the restaurant and investigators observed the Infiniti and the Kia depart the Jericho Café and Tavern parking lot. The Infiniti traveled west on Vermont Route 15 towards Essex, Vermont and the Kia traveled east on Vermont Route 15 towards Hyde Park, Vermont.

Investigators believed that Mitchell's meetings were consistent with narcotics transactions, so they maintained surveillance of both vehicles until a traffic stop was conducted on each vehicle after motor vehicle violations were observed by both vehicles. Milton Police Department (MPD) Detective Sam Noel conducted a traffic stop of the Infiniti at 134 Jericho Road in Essex, Vermont. Detective Noel identified Mitchell as the driver and Sutton as the passenger. Detective Noel also smelled marijuana. Shortly thereafter, MPD Officer Noi Jones and his narcotics detection K9, Biscotti, arrived and K9 Biscotti conducted an open-air sniff of the vehicle and alerted to the presence of suspected narcotics. Detective Noel asked for consent to search the vehicle, but Mitchell and Sutton denied consent to search the vehicle but consented to searches of their persons. Detective Noel found approximately $6,000 in U.S. currency on Sutton and approximately $2,000

in U.S. currency on Mitchell. Detective Noel then seized the defendant's Infiniti pending the issuance of a Vermont State search warrant.

On December 7, 2022, a Chittenden County Superior Court Judge issued a search warrant for the Infiniti. Investigators executed the search warrant and seized the following items:

- One (1) black and red shoulder bag (consistent with the bag that investigators observed Mitchell wearing when he departed 98 Meadow Road) located in the rear right passenger compartment floorboard area which contained five (5) clear plastic bags:
  - Two (2) larger clear plastic bags containing approximately 178 grams (combined gross weight) of cocaine base (confirmed by DEA lab reports) inside the above-mentioned bag;
  - Three (3) smaller clear plastic bags containing approximately 122.4 grams (combined gross weight) of cocaine base (confirmed by DEA lab reports, net weight of 87.236 grams) inside the above-mentioned bag;
- One (1) Glock 19, 9mm semi-automatic handgun with serial number STVL453 with a loaded magazine and a round in the chamber. The firearm was located under the front right passenger seat (accessible to the defendant who was in the driver's seat at the time of the car stop) with the handle of the gun sticking slightly out from underneath. The Burlington Police Department previously entered this firearm in a law enforcement database as stolen.

Investigators also obtained a warrant to search Wilde's vehicle. Investigators executed the search warrant and seized the following items:

- One (1) tan leather purse located in the front passenger compartment on the front floorboard area containing:
    - One (1) large clear plastic knotted bag containing approximately 233.3 grams (combined gross weight) of cocaine base (196.344 grams net weight confirmed by DEA lab report) located inside of a lemon hard candy plastic bag inside of the above-mentioned bag;
    - One (1) small clear plastic container with a pink lid containing approximately 35.3 grams (combined gross weight) of cocaine base (confirmed by DEA lab report) inside the above-mentioned bag;
    - One (1) gray-colored metal container containing seven pills of suspected oxycodone inside the above-mentioned bag (45.8 combined gross weight);
- One (1) black leather purse located in the front driver's compartment in the front floorboard area containing:
    - One (1) small clear plastic knotted bag containing approximately 62.9 grams (combined gross weight) of a purple rock like substance, suspected to be fentanyl inside the above-mentioned bag;
    - Sixty-eight (68) glassine bags containing a purple powder of suspected fentanyl contained in a small black zippered case located by inside the above-mentioned bag;
- One (1) plastic fruit snack bag containing approximately 42.3 grams (combined gross weight) of an off-white rock like substance believed to be cocaine

base, further contained inside of a ripped "Dunkin" paper bag inside of the above-mentioned vehicle console.

Based on the investigation to date, law enforcement believes that Mitchell provided the above-described drugs to Wilde. Accordingly, the evidence against Mitchell is strong and demonstrates his danger to the community. *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (danger to the community includes "the harm to society caused by [the likelihood of continued] narcotics trafficking). To be sure, the drug trafficking trade is even more harmful than just the attendant risks of consuming dangerous narcotics. Narcotics beget violence. The two are unequivocally and dangerously linked, as evidenced by the defendant's joint and/or constructive possession of a firearm. *See United States v. Carter*, 750 F.3d 462, 470 (4th Cir. 2014) (discussing link between drugs and violence).

Second, the defendant's criminal history demonstrates that he was on probation/parole at the time of the instant offense. What is more, is that the defendant appears to have violated his probation on several occasions. Indeed, DEA communicated with the defendant's probation officer, Jasmine Murray, from Chesapeake, Virginia via email on August 7, 2023, at 1:20 p.m. The substance of that email was provided to defense counsel on the afternoon of August 7, 2023. Probation Officer Murray wrote the following with regard to the defendant:

> Good afternoon,
>
> Mr. Mitchell has called this office several times over the course of a month. Initially, his federal warrants were not mentioned due to him being a flight risk. He was scheduled to report three different times and failed to do so. This office was unable to arrest Mr. Mitchell due to his failure to report. Mr. Mitchell's case was placed in absconder status on June 13, 2023. On July 17, 2023, he was advised of his federal warrants and instructed to turn himself in to one of our local jails so that a federal detainer could be issued. He never turned himself in, instead, he called last Friday to advise that he would catch a flight to VT to turn himself in. He was advised that a probation violation was issued because of his federal matters and for leaving the state without permission. Mr. Mitchell was also instructed to turn

himself in to Chesapeake City Jail upon his release on his federal warrants and his return to VA. Mr. Mitchell was made aware of his probation violations prior to turning himself in.

While the defendant surrendered in this case, the defendant's apparent probation violation(s) are coupled with prior failures to appear which include an open case in Bronx County, New York. This demonstrates that the defendant is a high risk of non-appearance and that he is a poor candidate for community supervision.

Ultimately, no set of elaborate conditions can protect the community in this instance. As this Court's sister district has observed:

> The quintessential factor is whether the defendant will do as the court directs. There are a variety of conditions that could reduce potential danger and flight if a defendant would abide by them. Examples include home confinement, electronic monitoring, curfews, pretrial services or family supervision, drug testing and treatment, and employment or educational mandates. However, none of these conditions will suffice to protect the community or minimize the flight risk if a defendant's past behavior amply demonstrates that he will not honor them. In other words, past behavior best predicts future behavior and whether the court can rely on a defendant's good faith promises. Therefore, an analysis of how a defendant has honored his criminal justice promises in the past is a critical component of the bail analysis.

*United States v. Vasconcellos*, 519 F. Supp. 2d 311, 317–18 (N.D.N.Y. 2007) (quoting *United States v. Barnett*, No. 5:03-CR-243, 2003 WL 22143710, *12 (N.D.N.Y. Sept. 17, 2003)).

Here, the defendant's past behavior including engaging in criminal conduct while on probation and failures to appear in Chesapeake, Virginia and elsewhere establishes a consistent inability to comport with the law. Accordingly, the court cannot reasonably rely on a potential assertion by the defendant that he will comply with conditions of release. At bottom, defendant Mitchell is an armed drug trafficker. This Court should order his pretrial detention to ensure the

safety of the community and assure his future appearance.

Dated at Burlington, in the District of Vermont, August 8, 2023.

>Respectfully submitted,
>
>NIKOLAS P. KEREST
>United States Attorney
>
>By: /s/ Zachary B. Stendig
>     Zachary B. Stendig
>     Assistant U.S. Attorney
>     P.O. Box 570
>     Burlington, VT 05402-0570
>     (802) 951-6725